Approved: _____
WON S. SHIN
Assistant United States Attorney

Before:   HONORABLE JAMES C. FRANCIS
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :   SEALED COMPLAINT
                                  :
          - v. -                  :   Violations of
                                  :   18 U.S.C §§ 1343, 1349,
BARRY CONNELL,                    :   1028A, and 2
                                  :
               Defendant.         :   COUNTY OF OFFENSE:
                                  :   NEW YORK
- - - - - - - - - - - - - - - - X

17 MAG 694

SOUTHERN DISTRICT OF NEW YORK, ss.:

WESLEY ALEXANDER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

### COUNT ONE
### (Wire Fraud)

1.  From at least in or about December 2015, up to and including at least in or about November 2016, in the Southern District of New York and elsewhere, BARRY CONNELL, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, and affected a financial institution, to wit, CONNELL, while an employee of a financial institution (the "Bank"), engaged in a scheme to defraud Bank clients whose accounts CONNELL managed by making unauthorized transfers of money from the clients' accounts for his personal benefit, and in the course of executing such scheme, caused

interstate wires to be transmitted to, from, and through the Southern District of New York.

(Title 18, United States Code, Sections 1343, 1349, and 2.)

## COUNT TWO
### (Aggravated Identity Theft)

2.   From at least in or about December 2015, up to and including at least in or about November 2016, in the Southern District of New York and elsewhere, BARRY CONNELL, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, CONNELL transferred, possessed, and used the name, signature, and account numbers of a Bank client whose account CONNELL managed during and in relation to the wire fraud offense charged in Count One of this Complaint.

(Title 18, United States Code, Section 1028A(a)(1), 1028A(b), and 1028A(c)(5).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3.   I am a Special Agent with the FBI. I am currently assigned to a squad responsible for investigating wire fraud, bank fraud, securities fraud, money laundering, and other white-collar offenses. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews I have conducted, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

### OVERVIEW

4.   From approximately 2008 to in or about November 2016, BARRY CONNELL, the defendant, was employed by the Bank as a financial advisor in the wealth management segment. In his capacity as a financial advisor, CONNELL's responsibilities

included managing the accounts of high net worth individuals. Beginning in approximately 2015, CONNELL managed for several members of a family (the "Family") multiple accounts that the Family maintained with the Bank's wealth management segment (the "Accounts"). At various times, the Accounts collectively held tens of millions of dollars in assets. From at least in or about December 2015 to at least in or about November 2016, CONNELL effected numerous unauthorized transactions from the Accounts and as a result defrauded the Family of at least approximately 5 million dollars. CONNELL used the money he stole from the Family to, among other things, pay for numerous exorbitant expenses, including a year's rent for a house near Las Vegas, country club membership fees, private jet expenses, and at automobile dealerships in New Jersey and Nevada.

### The Bank and the Accounts

5. Based on my review of the Bank's regulatory filings and other Bank records, I have learned, in substance and in part, the following:

   a. The Bank is a global financial services firm headquartered in New York, New York. The Bank's wealth management segment is headquartered in Purchase, New York.

   b. Two members of the Family ("Client-1" and "Client-2"), had authority over one of the Accounts ("Account-1"), which was opened in or about June 2015.

   c. Client-1 also had authority over another of the Accounts ("Account-2"), which was opened in or about June 2015.

   d. A third member of the Family ("Client-3") has authority over another of the Accounts ("Account-3"), which was opened in or about August 2015.

   e. A fourth member of the Family ("Client-4") has authority over two additional Accounts ("Account-4" and "Account-5"), which were opened in or about October 2015 and in or about June 2015, respectively.

   f. After each of the Accounts was opened, BARRY CONNELL, the defendant, was assigned by the Bank to manage that Account on behalf of the Family member or members with authority over the Account. As a financial adviser, CONNELL was required to, among other things, manage the Accounts in the best
3

interests of his clients and consistent with their investment objectives, and not for his own personal benefit.

### Wire Transfers and Checks from Account-1 and Account-2

6. Based on my review of Bank records, I have learned, in substance and in part, the following:

    a. On at least forty-eight occasions beginning in or about 2015, BARRY CONNELL, the defendant, caused wire transfers to be made from Account-1 or Account-2 to a third party's bank. In each instance, CONNELL effected the wire transfer by causing the submission of a Bank form stating that CONNELL had received verbal client instructions from Client-1 authorizing the wire transfer at a specified date and time. Each form also stated the reason for the transaction was to pay bills or, in two instances, the purchase of a car.

        i. Twenty-eight wire transfers were made to the California-based bank of a private jet company based in California ("Private Jet Company-1").

        ii. Fourteen wire transfers were made to the New York, New York-based bank of an entertainment company located in California ("Entertainment Company-1").

        iii. Two wire transfers were made to the Delaware-based bank of an automotive dealership based in New Jersey ("Auto Dealership-1").

        iv. Two wire transfers were made to the California-based bank of an automotive dealership based in Nevada ("Auto Dealership-2").

        v. One wire transfer was made to the Texas-based bank of a dentist based in Texas ("Dentist-1").

        vi. One wire transfer, in the amount of $50,000.00, was made on or about April 12, 2016 to the New York, New York-based bank of an individual located in Nevada ("Individual-1"). On or about April 11, 2016, another individual ("Individual-2") received an email from Individual-1 attaching an agreement for CONNELL and Individual-2 to lease a residence in Nevada from Individual-1; the lease required an upfront payment of $50,600.00. On or about April 12, 2016, Individual-2 forwarded that email to an email address used by CONNELL (the "CONNELL Personal Email Account"), and later that

day, CONNELL forwarded the email in turn to CONNELL's email account at the Bank (the "CONNELL Bank Email Account").

        vii.    A summary of these wire transfers is set forth below.

| Date | Account | Amount | Payee |
|---|---|---|---|
| 2015.12.30 | Account-1 | 61,000.00 | Entertainment Company-1 |
| 2016.01.04 | Account-1 | 78,590.35 | Auto Dealership-1 |
| 2016.01.05 | Account-2 | 26,806.70 | Auto Dealership-1 |
| 2016.01.11 | Account-1 | 73,800.00 | Private Jet Company-1 |
| 2016.01.13 | Account-2 | 18,000.00 | Entertainment Company-1 |
| 2016.01.13 | Account-1 | 18,000.00 | Entertainment Company-1 |
| 2016.01.28 | Account-1 | 85,000.00 | Private Jet Company-1 |
| 2016.01.29 | Account-2 | 52,975.60 | Entertainment Company-1 |
| 2016.02.01 | Account-1 | 19,100.00 | Private Jet Company-1 |
| 2016.02.10 | Account-1 | 85,000.00 | Private Jet Company-1 |
| 2016.02.11 | Account-1 | 32,700.00 | Private Jet Company-1 |
| 2016.02.18 | Account-1 | 25,000.00 | Entertainment Company-1 |
| 2016.02.19 | Account-1 | 25,000.00 | Entertainment Company-1 |
| 2016.02.22 | Account-1 | 75,000.00 | Private Jet Company-1 |
| 2016.02.24 | Account-1 | 23,900.00 | Entertainment Company-1 |
| 2016.02.29 | Account-1 | 75,000.00 | Private Jet Company-1 |
| 2016.03.03 | Account-1 | 29,826.00 | Private Jet Company-1 |
| 2016.03.04 | Account-1 | 18,000.00 | Entertainment Company-1 |
| 2016.03.22 | Account-2 | 85,000.00 | Private Jet Company-1 |
| 2016.03.24 | Account-2 | 25,000.00 | Entertainment Company-1 |
| 2016.04.04 | Account-2 | 36,077.76 | Private Jet Company-1 |
| 2016.04.12 | Account-1 | 50,000.00 | Individual-1 |
| 2016.04.14 | Account-1 | 54,795.00 | Private Jet Company-1 |
| 2016.04.25 | Account-1 | 48,652.00 | Dentist-1 |
| 2016.04.29 | Account-1 | 40,000.00 | Private Jet Company-1 |
| 2016.05.06 | Account-1 | 85,500.00 | Private Jet Company-1 |
| 2016.05.12 | Account-1 | 80,000.00 | Private Jet Company-1 |
| 2016.05.17 | Account-1 | 47,000.00 | Private Jet Company-1 |
| 2016.05.23 | Account-1 | 36,000.00 | Private Jet Company-1 |
| 2016.06.02 | Account-1 | 47,501.00 | Private Jet Company-1 |
| 2016.06.15 | Account-1 | 57,000.00 | Private Jet Company-1 |
| 2016.07.01 | Account-1 | 90,000.00 | Auto Dealership-2 |
| 2016.07.06 | Account-1 | 91,122.00 | Auto Dealership-2 |
| 2016.07.14 | Account-1 | 75,450.00 | Private Jet Company-1 |
| 2016.07.18 | Account-1 | 89,650.00 | Private Jet Company-1 |
| 2016.07.19 | Account-1 | 89,750.00 | Private Jet Company-1 |
| 2016.07.21 | Account-1 | 88,650.00 | Private Jet Company-1 |
| 2016.08.09 | Account-1 | 20,000.00 | Entertainment Company-1 |

| Date | Account | Amount | Payee |
|---|---|---|---|
| 2016.08.12 | Account-1 | 30,000.00 | Entertainment Company-1 |
| 2016.09.01 | Account-1 | 26,570.82 | Entertainment Company-1 |
| 2016.09.02 | Account-1 | 24,250.00 | Private Jet Company-1 |
| 2016.09.06 | Account-1 | 75,000.00 | Entertainment Company-1 |
| 2016.09.09 | Account-1 | 21,000.00 | Private Jet Company-1 |
| 2016.09.22 | Account-1 | 35,000.00 | Private Jet Company-1 |
| 2016.09.30 | Account-1 | 41,500.00 | Entertainment Company-1 |
| 2016.10.04 | Account-1 | 61,000.00 | Private Jet Company-1 |
| 2016.10.11 | Account-1 | 56,000.00 | Private Jet Company-1 |
| 2016.10.20 | Account-1 | 26,000.00 | Private Jet Company-1 |
| Total | | 2,456,167.23 | |

b. On at least seventeen occasions, CONNELL caused checks written on Account-1 or Account-2 to be presented for payment.

i. Eleven checks were presented for payment to a credit card company ("Credit Card Company-1"). According to records obtained from Credit Card Company-1, an account in the name of CONNELL's spouse, for which CONNELL was an authorized user, received payments corresponding to these checks in both amount and date.

ii. Two checks were presented for payment to Individual-2, the individual with whom CONNELL leased a residence in Nevada as described above.

iii. Two checks were presented for payment to a country club ("Country Club-1"). One of those checks, dated May 11, 2016, was written to Country Club-1 in the amount of $35,860. On or about May 11, 2016, the CONNELL Personal Email Account received an invoice from Country Club-1, in the amount of $35,860.00, and later that day CONNELL forwarded the invoice to the CONNELL Bank Email Account.

iv. One check was presented for payment to a township in New Jersey ("Township-1"). According to Bank records, CONNELL's home address is in Township-1.

v. One check was presented for payment to a yacht company ("Yacht Company-1").

vi. A summary of these checks is set forth below.

| Date | Account | Amount | Payee |
|---|---|---|---|
| 2016.01.13 | Account-1 | 100,000.00 | Credit Card Company-1 |
| 2016.01.14 | Account-1 | 155,000.00 | Credit Card Company-1 |
| 2016.02.05 | Account-1 | 75,262.00 | Credit Card Company-1 |
| 2016.02.19 | Account-1 | 40,969.96 | Township-1 |
| 2016.03.04 | Account-1 | 160,000.00 | Credit Card Company-1 |
| 2016.03.24 | Account-1 | 300,000.00 | Credit Card Company-1 |
| 2016.04.27 | Account-1 | 305,000.00 | Credit Card Company-1 |
| 2016.05.11 | Account-2 | 40,000.00 | Individual-2 |
| 2016.05.23 | Account-1 | 35,860.00 | Country Club-1 |
| 2016.06.07 | Account-2 | 40,000.00 | Individual-2 |
| 2016.06.20 | Account-2 | 175,000.00 | Credit Card Company-1 |
| 2016.06.23 | Account-1 | 185,000.00 | Credit Card Company-1 |
| 2016.07.20 | Account-2 | 266,000.00 | Yacht Company-1 |
| 2016.08.19 | Account-1 | 261,500.00 | Credit Card Company-1 |
| 2016.09.23 | Account-1 | 220,000.00 | Credit Card Company-1 |
| 2016.10.13 | Account-1 | 20,000.00 | Country Club-1 |
| 2016.10.14 | Account-1 | 175,000.00 | Credit Card Company-1 |
| Total | | 2,554,591.96 | |

7. On or about January 3, 2017, another FBI Special Agent and I spoke with Client-1, who told us, in substance and in part, the following:

a. Client-1 did not authorize BARRY CONNELL, the defendant, to execute the wire transfers described above in paragraph 6(a).

b. Client-1 directed CONNELL to help Client-1 pay Client-1's bills. To that end, CONNELL maintained Client-1's checkbooks, and Client-1 signed some blank checks for CONNELL to use to pay Client-1's bills. Client-1 did not, however, authorize CONNELL to use the signed blank checks in the amounts or to the payees described above in paragraph 6(b).

c. Some of the signatures depicted in images of the checks described above in paragraph 6(b) were not Client-1's signature.

8. On or about December 22, 2016, another FBI Special Agent and I spoke with Client-2, who told us, in substance and in part, that Client-2 did not authorize the transactions described above in paragraphs 6(a) and 6(b).

7

### Internal Transfers from Account-1

9.   Based on my review of Bank records, I have learned, in substance and in part, that on at least seven occasions, BARRY CONNELL, the defendant, caused funds to be transferred from Account-1 to Account-2.  In each instance, CONNELL effected the transaction by causing the filing of a Bank form stating that he had received verbal client instructions from Client-1 authorizing the transaction at a specified date and time.  Each form also stated the reason for the transaction was to pay bills or for checks.  A summary of these transactions is set forth below.

| Date       | Amount     | Transferee Account |
|------------|-----------:|--------------------|
| 2015.12.02 |   3,000.00 | Account-2          |
| 2016.05.10 |  10,000.00 | Account-2          |
| 2016.06.01 |   7,107.49 | Account-2          |
| 2016.06.02 |   1,000.00 | Account-2          |
| 2016.06.20 |  95,000.00 | Account-2          |
| 2016.06.21 |  80,000.00 | Account-2          |
| 2016.07.15 |  95,000.00 | Account-2          |
| **Total**  | 291,107.49 |                    |

10.  On or about January 3, 2017, another FBI Special Agent and I spoke with Client-1, who told us, in substance and in part, that Client-1 did not authorize BARRY CONNELL, the defendant, to execute the transfers from Account-1 to Account-2 described above in paragraph 9.

11.  On or about December 22, 2016, another FBI Special Agent and I spoke with Client-2, who told us, in substance and in part, that Client-2 did not authorize BARRY CONNELL, the defendant, to execute the transfers from Account-1 to Account-2 described above in paragraph 9.

### Internal Transfers from Account-3

12.  Based on my review of Bank records, I have learned, in substance and in part, that on at least fifteen occasions, BARRY CONNELL, the defendant, caused funds to be transferred from Account-3 to Account-1 or Account-2.  In each instance, CONNELL effected the transaction by causing the submission of a Bank form stating that he had received verbal client instructions from Client-3 authorizing the transaction at a specified date and time.  Each form also stated the reason for the transaction

was to pay bills or for checks. A summary of these transactions is set forth below.

| Date | Amount | Transferee Account |
|---|---:|---|
| 2016.04.21 | 75,000.00 | Account-1 |
| 2016.04.28 | 50,000.00 | Account-1 |
| 2016.05.03 | 50,000.00 | Account-1 |
| 2016.06.06 | 50,000.00 | Account-2 |
| 2016.07.13 | 95,000.00 | Account-1 |
| 2016.07.14 | 55,000.00 | Account-1 |
| 2016.07.18 | 90,000.00 | Account-2 |
| 2016.08.12 | 75,000.00 | Account-1 |
| 2016.09.01 | 50,000.00 | Account-1 |
| 2016.10.14 | 15,495.45 | Account-1 |
| 2016.10.17 | 12,500.00 | Account-1 |
| 2016.10.18 | 2,154.33 | Account-2 |
| 2016.10.19 | 10,000.00 | Account-2 |
| 2016.10.24 | 60,000.00 | Account-1 |
| 2016.10.25 | 90,000.00 | Account-1 |
| **Total** | **780,149.78** | |

13. On or about December 13, 2016, another FBI Special Agent and I spoke with Client-3, who told us, in substance and in part, that Client-3 did not authorize BARRY CONNELL, the defendant, to execute the transfers from Account-3 to Account-1 or Account-2 described above in paragraph 12.

### Internal Transfers from Account-4 and Account-5

14. Based on my review of Bank records, I have learned, in substance and in part, that on at least three occasions, BARRY CONNELL, the defendant, caused funds to be transferred from Account-4 to Account-1 or Account-2. In each instance, CONNELL effected the transaction by causing the submission of a Bank form stating that he had received verbal client instructions from Client-4 authorizing the transaction at a specified date and time. Each form also stated the reason for the transaction was for a gift or to pay bills. A summary of these transactions is set forth below.

| Date | Amount | Transferee Account |
|---|---:|---|
| 2016.03.16 | 80,000.00 | Account-2 |
| 2016.03.18 | 90,000.00 | Account-2 |
| 2016.05.17 | 50,000.00 | Account-1 |
| **Total** | **220,000.00** | |

15.   On at least fourteen occasions, BARRY CONNELL, the defendant, caused funds to be transferred from Account-5 to Account-1 or Account-2.  In each instance, CONNELL effected the transaction by causing the submission of a Bank form stating that he had received verbal client instructions from Client-4 authorizing the transaction at a specified date and time.  Each form also stated the reason for the transaction was to pay bills.  A summary of these transactions is set forth below.

| Date | Amount | Transferee Account |
|---|---:|---|
| 2016.04.21 | 75,000.00 | Account-1 |
| 2016.04.28 | 50,000.00 | Account-1 |
| 2016.05.03 | 50,000.00 | Account-1 |
| 2016.06.20 | 75,000.00 | Account-1 |
| 2016.07.13 | 85,000.00 | Account-1 |
| 2016.07.18 | 90,000.00 | Account-2 |
| 2016.08.12 | 75,000.00 | Account-1 |
| 2016.09.01 | 50,000.00 | Account-1 |
| 2016.10.17 | 12,500.00 | Account-1 |
| 2016.10.18 | 2,154.33 | Account-2 |
| 2016.10.19 | 10,000.00 | Account-2 |
| 2016.10.24 | 50,000.00 | Account-1 |
| 2016.10.31 | 95,000.00 | Account-1 |
| 2016.11.01 | 5,000.00 | Account-1 |
| **Total** | **724,654.33** | |

16.   On or about December 13, 2016, another FBI Special Agent and I spoke with Client-4, who told us, in substance and in part, that Client-4 did not authorize BARRY CONNELL, the defendant, to execute the transfers from Account-4 or Account-5 to Account-1 or Account-2 described above in paragraphs 14 and 15.

WHEREFORE, deponent prays that an arrest warrant be issued for BARRY CONNELL, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

*Wesley*

WESLEY ALEXANDER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
27th day of January, 2017

*James C. Francis II*

HONORABLE JAMES C. FRANCIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

11